J. S12040/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JANET SELLARD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| GEORGE E. SHOWERS AND DEAN R. | : | |
| SHOWERS, SR., IN THEIR CAPACITIES | : | |
| AS CO-EXECUTORS OF THE ESTATE OF | : | |
| ANNA R. SHOWERS, DECEASED | : | |
| | : | No. 716 MDA 2017 |
| APPEAL OF:  GEORGE E. SHOWERS | : | |
| AND DEAN R. SHOWERS, SR. | : | |

Appeal from the Order Entered March 29, 2017,
in the Court of Common Pleas of Union County
Civil Division at No. 10-8084

BEFORE:  LAZARUS, J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MAY 25, 2018**

George E. Showers and Dean R. Showers, Sr., purport to appeal from

two orders entered in the Court of Common Pleas of Union County on

March 29, 2017.  We quash.

The orphans' court set forth the following:

> The matter before the Court is a dispute between the
> three children of the Decedent, Anna R. Showers.
> Anna R. Showers die[d] testate on January 31, 2010.
> Her Last Will and Testament dated April 22, 1978 left
> her entire Estate to her three children, George E.
> Showers, Jr., Janet M. Sellard and Dean R.
> Showers, Sr. and his children. There were no specific
> bequests in the Will.
>
> The main asset of the Estate was a farm. The
> Decedent's daughter, Janet M. Sellard ([a]ppellee

herein) resided on the farm with her mother, both before and after Ms. Showers' death. Appellee's husband also resided with her.

George E. Showers, Jr. and Dean R. Showers, Sr. ([a]ppellants herein) worked the farm to various degrees during their mother's lifetime.

At the time of this litigation, much of the farm was in disrepair with weeds growing throughout it and farm implements and vehicles sitting rusting in the weeds.

Although [a]ppellee was initially listed in the Will to be the Executrix, for reasons not relevant to the this [sic] appeal, [a]ppellee was not appointed as Executrix and [appellants] were appointed as Executors. Disputes arose between the parties and on April 30, 2015 [a]ppellee filed a Petition for First and Partial Accounting and also a Petition Seeking Specific Performance of Estate Settlement Agreement. Significant conflict existed between the parties regarding Estate assets and the management of the Estate. On September 24, 2015, [a]ppellee filed a Petition to Remove Appellants as Executors of the Decedent's Estate. On December 30, 2015 after a hearing, the parties agreed that [a]ppellants would be removed as Co-Executors and an independent Executor would be appointed by the Court. On January 26, 2016, Attorney Sara Hudock was appointed to be Executrix of the Estate.

On August 22, 2016, [a]ppellants filed a Motion to Compel Rental Payments to be paid by [a]ppellee who was still residing in the Estate residence. On September 28, 2016 [a]ppellee filed a Motion to Strike the Appellants' Motion to Compel Rental Payments. On October 25, 2016 a hearing was held and the Court granted [a]ppellee's Motion to Strike Appellants' Motion to Compel Rental Payments.

The Executrix had been directed by the Court to obtain appraisals of the farm. The parties argued that they had initially agreed to a division of the acreage regarding the property. Appellee was to get

> the residence and a smaller portion of acreage while [a]ppellants were to receive a majority of the acreage.
>
> After the appraisals, the Executrix was directed by the Court to conduct a private sale between the parties. This was done and the Executrix determined that [a]ppellee was the high bidder. On January 5, 2017, [a]ppellants filed a Petition to remove the Execut[rix] and for surcharge. Then on January 9, 2017, [a]ppellants filed a Petition for a Preliminary Injunction seeking to prohibit the Executrix and the parties from disposing of any Estate assets including the real estate. The Executrix had notified the parties that [a]ppellee was the high bidder on the real estate and intended to transfer/sell the real estate to [a]ppellee for the amount set forth in the bid.
>
> The Court scheduled a hearing on the Motions for March 20, 2017. The hearing was continued until March 28, 2017.
>
> At the March 28, 2017 hearing the Court denied [a]ppellants['] Petition to remove the Executor and impose a surcharge and the Court granted the Petition for an injunction in part but denied it in part. The Court permitted the Executrix to transfer the Estate real estate to [a]ppellee.

Orphans' court opinion, 7/13/17 at 1-3.

The record reflects that on March 29, 2017, the orphans' court entered three orders on the docket. The first order granted appellee's oral motion to withdraw her petition to seek specific performance of estate settlement agreement. The second order denied appellants' petition to remove the executrix and for surcharge. The third order denied in part and granted in part appellants' petition for an injunction. The orphans' court denied the appellant's petition for an injunction as to the transfer of estate real property

and authorized the executrix to execute a sales agreement and deed in order to transfer the estate real property to appellee for $681,000. On April 27, 2017, appellants filed a notice of appeal to this court "from the order entered in this matter on the 29th day of March 2017." (Notice of appeal, 4/27/17.) In that notice of appeal, appellants failed to identify which of the three orders entered on March 29, 2017, from which they sought to take an appeal.[1]

Thereafter, in their civil docketing statement filed with this court, appellants attached only the order that denied in part and granted in part their petition for an injunction as the order from which they appealed. (Appellants' civil docketing statement, 6/8/17.) In the description of appeal section that directs an appellant to describe the action and result below, appellants' counsel wrote, "My clients stepped down as executors after trial court stopped hrg. Executor appointed who violated court order for timely accounting, negotiations by parties, failure to collect rent from beneficiary living on estate property, engaging in a private sale of estate prop." (**Id.** at unnumbered p. 2, § E, ¶ 1.) Appellants' counsel left blank that section of the civil docketing statement that directs an appellant to set forth the issues to be raised on appeal.

---

[1] We note that on May 3, 2017, the orphans' court ordered appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants timely complied.

On June 12, 2017, appellee filed an application to quash and dismiss appeal from interlocutory order. Thereafter, appellants filed a response. On July 3, 2017, appellants filed an "amended civil docketing statement." In that amended statement, appellants identified the issue to be raised on appeal as, "Did the trial court err in allowing a private sale of the estate real property?" (Appellants' amended civil docketing statement at unnumbered p. 2, § E, ¶ 1.) Appellants also wrote on the amended docket sheet that they "previously attached" the order from which this appeal is taken. (Appellants' amended civil docketing statement at unnumbered p. 2.)

On July 27, 2017, this court entered an order denying appellee's application to quash appeal without prejudice to her right to again raise the issues in her brief or, if her brief had already been filed, in a new application to quash. (Order of court 7/27/17.) On January 16, 2018, appellee filed her brief and again raised the issue of appealability.

In appellants' brief to this court, appellants contend that they are now appealing the orders of "December 30th, 2015, October 25, 2016, July 12, 2017 and March 28, 2017."[2] (Appellants' brief at 1.) The orders of

---

[2] We note that the three orders entered on the docket on March 29, 2017, are dated March 28, 2017.

December 30, 2015;[3] October 25, 2016;[4] and July 12, 2017,[5] however, are not properly before us. **See** Pa.R.A.P. 903(a) (requiring that a notice of appeal be filed within 30 days after entry of the order from which the appeal is taken).

With respect to appellants' seeming attempt to appeal two of the March 29, 2017 orders[6] in one appeal, the courts of this Commonwealth have specifically disapproved of this practice. ***See Gen. Elec. Credit Corp. v. Aetna Cas. & Sur. Co.***, 263 A.2d 448, 452-453 (Pa. 1970) (holding that one appeal from several judgments is discouraged as unacceptable practice and stating that the supreme court has quashed such appeals where no meaningful choice between them could be made); ***see also Egenrieder v. Ohio Cas. Group***, 581 A.2d 937, 940 (Pa.Super. 1990) (holding separate appeals were required to be filed by each appellant where trial court entered separate orders denying each appellant's motion on different grounds).

---

[3] Our review of the record reveals that the order of December 30, 2015, ordered the removal of appellants as co-executors.

[4] Our review of the record reveals that the order of October 26, 2016, denied appellants' motion to compel rental payments.

[5] We note that the order of July 12, 2017, post-dates the orders entered on March 29, 2017, that appellants purport to appeal from.

[6] Nothing in the record before us indicates that appellants purport to appeal from the March 29, 2017 order that granted appellee's oral motion to withdraw her petition to seek specific performance of estate settlement agreement.

Here, because appellants filed only one notice of appeal from the two separate orders, quashal on this basis is appropriate.

Even assuming **arguendo** that appellants properly appealed from the March 29, 2017 order that denied that part of their petition for injunction regarding the transfer of the estate real property and authorized the executrix to execute a sales agreement and deed in order to effectuate the sale and transfer of that property, the appeal would be quashed.

Pennsylvania Rule of Appellate Procedure 341 provides generally that an appeal may be taken as of right only from a final order. Pa.R.A.P. 341. A final order is any order that "disposes of all claims and of all parties," or "is entered as a final order pursuant to [Rule 341(c)]." **Id.** at 341(b). "In a decedent's estate, the confirmation of the final account of the personal representative represents the final order, subject to exceptions being filed and disposed of by the court." **In re Estate of Habazin**, 679 A.2d 1293, 1295 (Pa.Super. 1996) (citation omitted). Here, the March 29, 2017 order of the orphans' court, authorizing executrix to sell the estate real property, is not a final order because it is not an appeal from the confirmation of the final account of executrix. That, however, does not end the analysis because Rules 313 and 342 qualify Rule 341.

> Rule 313 provides that an appeal may be taken as of right from a collateral order, which is "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the

case, the claim will be irreparably lost." Pa.R.A.P. 313(b). Rule 342 ("Appealable Orphans' Court Orders"), provides, in relevant part, as follows:

**(a)** **General rule.—**An appeal may be taken as of right from the following orders of the Orphans' Court Division:

\* \* \*

(6) An order determining an interest in real or personal property . . . .

Pa.R.A.P. 342. We begin our review with Rule 342.

In *In re Estate of Stricker*, 602 Pa. 54, 977 A.2d 1115 (Pa. 2009), our Supreme Court held that an orphans' court's order to sell real estate in connection with the disposition of an estate was an interlocutory order that was not appealable under Rule 313 or former Rule 342. In that case, two tracts of land constituted the bulk of the decedent's estate, which was to be disposed of by two co-executors, one of whom was the appellant, in favor of approximately ten beneficiaries. One tract was subject to a third party's option to repurchase the property, which the third party had exercised. The remaining tract was put up for auction, where John Fulton made the highest bid. The orphans' court directed the estate to deliver that tract to Fulton. *Id.* at 1116-17.

Before the auction occurred, the appellant co-executor had made multiple below-market value offers to buy both tracts. His co-executrix and the beneficiaries rejected the offers. Although the appellant participated in the public auction for the unrestricted property, Fulton's bid not only exceeded the appellant's, but indeed exceeded the appellant's prior offers for both tracts combined. The appellant thereafter refused to cooperate in transferring either tract. The co-executrix then petitioned the court to compel the appellant to sign the agreement of sale

transferring the tract purchased by Fulton. The orphans' court entered an order so directing, and the appellant appealed that order. This Court quashed the appeal as interlocutory. On remand, the orphans' court ruled that the co-executors were bound to take the necessary steps to consummate the sale of one tract. The orphans' court also directed the co-executors to take the steps necessary to complete the sale of the other tract to Fulton. *Id.* at 1117.

Once again, the appellant sought relief in this Court, and once again this Court quashed the appeal for want of jurisdiction. First, we held that the orders were not final because a final accounting of the estate had not been rendered. Second, we held that the orders appealed from were not appealable under the collateral order doctrine as embodied by Rule 313. *Id.*

The Supreme Court granted the appellant's petition for allowance of appeal to address whether the orders in question were final pursuant to Rules 341 and 342 or were collateral orders that were appealable as of right pursuant to Rule 313. *Id.* The Court made the following observations:

> Rule 342 allows Orphans' Court judges to designate as final (and therefore immediately appealable) an order "making a distribution, or determining an interest in realty or personalty or the status of individuals or entities." Pa.R.A.P. 342. It does not require that any particular class of orders be treated as final, but instead leaves the determination of finality of orders not disposing of all claims and all parties up to the Orphans' Court judge. Pa.R.A.P. 342(1). Certification under Rule 342 is wisely left to the discretion of the Orphans' Court[ judges], who are in the best position to take the facts of the case into account when deciding whether

an immediate appeal would be appropriate.

"It is fundamental law in this Commonwealth that an appeal will lie only from final orders, unless otherwise expressly permitted by statute." ***T.C.R. Realty, Inc., v. Cox***, 472 Pa. 331, 372 A.2d 721, 724 (Pa. 1977). An appeal from an order directing the administrator of a decedent's estate to sell real estate belonging to the decedent is interlocutory and must be quashed. ***In re Maslowski's Estate***, 261 Pa. 484, 104 A. 675 (Pa. 1918); ***In re Estate of Habazin***, 451 Pa. Super. 421, 679 A.2d 1293 (Pa. 1996); ***see also Appeal of Snodgrass***, 96 Pa. 420, 421 (Pa. 1880) (holding that an order directing sale of real estate for payment of decedent's debts is not definitive, and an appeal will not lie therefrom: "Why should the proceeding be brought here by piece-meal when the whole may be reviewed on an appeal from the final confirmation?").

***Id.*** at 1117-18 (citations modified).

The appellant argued that, if he was not afforded an immediate appeal, "the tracts [would] be sold, his claims regarding the properties [would] be lost, and therefore the orders should be considered final." ***Id.*** at 1118. Our Supreme Court disagreed in an instructive passage:

It is true that the real estate will no longer be available to [the appellant] once a sale to another party is accomplished. But [the appellant] was not bequeathed the tracts themselves. Instead, [the appellant] is entitled only to a share of the decedent's estate after it has been liquidated. Therefore, his

- 10 -

claim that an immediate appeal is necessary to protect his interests fails. Indeed, [the appellant] has no greater rights with respect to this property than any potential buyer. Moreover, if [the Court] accepted [the appellant's] argument that any claim on or about property that might be sold during the probate process should be immediately appealable, the appellate court system would be flooded with such appeals and the administration of decedents' estates would be unreasonably delayed.

*Id.* at 1118; *cf. id.* at 1119-21 (Saylor, J., concurring) (positing that immediate appeal in certain circumstances might expedite disposition of the estate). The Court went on to explain that "an order is not final and appealable merely because it decides one issue of importance to the parties." *Id.* at 1118 (quoting 3 Patridge-Remick, Practice & Procedure in the Orphans' Court of Penna. § 26.04); *see In re Estate of Quinn*, 2002 PA Super 243, 805 A.2d 541, 543 (Pa. Super. 2002) (noting that "the confirmation of the final account of the personal representative represents the final order, and deeming an appealed distribution order interlocutory because the orphans' court had not confirmed a final accounting and the estate "remain[ed] under administration").

After *Stricker*, the Supreme Court amended Rule 342. No longer was the question of appealability vested strictly in the orphans' court's discretion. Rather, the revised rule identified certain orders that would henceforth be appealable as of right, independent of any orphans' court finding regarding the nature of the order and its place in the proceedings. Locke argues that subsection (a)(6) of Rule 342 applies in this case. This subsection designates as immediately appealable an orphans' court order that "determines an interest in real or personal property." Pa.R.A.P. 342(a)(6).

In *In re Estate of Ash*, 2013 PA Super 241, 73 A.3d 1287 (Pa. Super. 2013), this Court interpreted and applied Rule 342 in its current form. In *Ash*, the will at issue made specific cash bequests and directed that the remaining personal and real property be sold, with the proceeds to be divided among three residual beneficiaries. The appellant, Joseph Heit, was named executor; the remaining two beneficiaries were his brother, James Heit, and Duane Fetter. As executor, the appellant conveyed to himself (as an individual) a tract of land referred to as Tract 1, which he contended was consistent with an agreement of sale entered into with the decedent prior to his death. The orphans' court set aside the sale, removed the appellant as executor, and appointed an administratrix in the appellant's place. The appellant did not appeal that order. *Id.* at 1288.

Thereafter, Fetter indicated that he had entered an agreement with the decedent to purchase an adjoining tract ("Tract 2"), and signaled to the administratrix that he was willing to buy Tract 2 as well as the two adjoining tracts, Tract 1 and Tract 3. It appeared from the record that the administratrix intended to sell these tracts to Fetter. Thereafter, the appellant filed a "Petition to Force Sale of Real Estate," wherein he asserted that he was willing to buy Tract 1. He also contended that Tract 1 would be landlocked unless an easement were granted over Tract 2. He asked the court to grant an order directing the administratrix to grant the easement over Tract 2 and stay the sale of Tract 1 until the parties' disputes regarding the property were resolved. The administratrix, however, indicated that it would be in the best interests of the estate to sell all three tracts to Fetter, both because the net proceeds would be greater and because it would avoid the prospect of litigation with Fetter. The orphans' court entered an order denying the appellant's petition and authorizing the administratrix to enter into an agreement selling all of the tracts to Fetter, and the appellant appealed. *Id.* 1288-89.

We found the facts in **Ash** to be apposite to those in **Stricker**, notwithstanding the intervening amendments to Rule 342:

> The order on appeal before us authorizes the administratrix to sell real estate formerly belonging to [Ash] in order to accomplish the eventual division of the estate assets (**i.e.**, the sale proceeds) among the beneficiaries as directed by Ash's will. Pursuant to **Stricker**, we conclude this order is neither final nor collateral but, instead, is interlocutory. . . .

> In reaching our result, we are mindful that the Rules of Appellate Procedure addressing the appealability of Orphans' Court orders have changed somewhat since **Stricker** was decided. . . . Effective February 13, 2012, the Supreme Court deleted from Rule 342 the provision concerning the ability of an Orphans' Court to make determinations of finality and, instead, listed various orders that would be immediately appealable. **See** Pa.R.A.P. 342(a). Among the orders listed in Rule 342 is an order determining an interest in real property. Pa.R.A.P. 342(a)(6).

> We do not believe the order before us is one of the appealable orders set forth by Rule 342, whether in Subsection (6) or otherwise. Consequently, we do not believe Subsection (6) and/or any other post[-]**Stricker** change(s) to Rule 342 negate **Stricker** and render the order before us appealable. We understand the effect of the instant order will be to allow the realty sale and, if the administratrix sells the tracts, Fetter will come to own them. Thus, if the sale is

completed, the order will eventually lead to a change in the ownership interest of the realty. Nevertheless, the Orphans' Court decision now on appeal did not involve the court having to resolve some dispute about who had or has an interest in the tracts: The estate obviously owns them. The court's decision was about . . . the propriety of her plan to reduce the estate assets to cash by sale to a particular party, the goal being to distribute the sale proceeds in accordance with the will. The court's decision was not about determining an interest in the subject realty. Accordingly, *Stricker* controls this case.

*Id.* at 1289-90 (citations modified; footnotes omitted). In a footnote, we acknowledged that certain language in the comment to the rule as amended, which drew upon Justice Saylor's concurring opinion in *Stricker*, perhaps complicated the analysis. However, we concluded that if "the changes to Rule 342 were indeed meant to abrogate *Stricker* and . . . to transform an order such as the one before us into an order determining an interest in realty under Subsection (6), . . . that pronouncement should be made by the Supreme Court. At present, we will follow *Stricker*." *Id.* at 1290 n.5.

. . . .

In *Ash*, we acknowledged that "the effect of the [challenged order would] be to allow the realty sale," which eventually would "lead to a change in the ownership interest of the realty." *Ash*, 73 A.3d at 1290. Nonetheless, we effectively held that subsection (a)(6) applied only when the orphans' court enters an order that "resolve[s] some dispute about who had or has an interest in the tracts" at issue"; there, because "the estate obviously own[ed]" the property in question, subsection (a)(6) did not apply. *Id.*

- 14 -

*Estate of Cherry*, 111 A.3d 1204, 1207-1210 (Pa.Super. 2015) (footnote omitted).

Here, the order of the orphans' court denied appellants' petition for injunctive relief as to the transfer of the estate real property and permitted the sale of that property. The order did not resolve a dispute as to any ownership interest in the estate real property because the estate owned the property. Consequently, the order that permitted the sale did nothing more than reduce the estate real property to cash which was then to be distributed to the residual beneficiaries pursuant to the will. Therefore, that part of the order that denied appellants' petition for injunctive relief would not be appealable under Rule 342(a)(6).

We now address whether the order would qualify as a collateral order that is appealable as of right under Pa.R.A.P. 313.

> As noted, *supra*, Rule 313 provides that an appeal may be taken as of right from "an order [that is] separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b).
>
> The *Stricker* Court held that the order in question in that case was not a collateral order entitled to immediate review under Rule 313. Noting that, "to qualify as collateral, an order must be separable from the main cause of action," and that the collateral order doctrine "is to be construed narrowly to preserve the integrity of the general rule that only final orders may be appealed," the Court held that "it

> is not possible that an order to sell estate property **in pursuit of**" the final accounting and distribution of the estate provided for by the will could be "collateral to the main cause of action." **Id.** at 1119 (emphasis added). To the contrary, the Court found, it was "**central** to the main cause of action." **Id.** (emphasis in original). Thus, the order in question did not qualify for immediate appeal as a collateral order under Rule 313.

**Estate of Cherry**, 111 A.3d at 1211.

Likewise, the estate real property in this case is central to the estate. Disposition of the estate real property aids in the completion of the final accounting and distribution of the residual estate to the residual beneficiaries. Therefore, because the estate real property is "central to the main cause of action," the order denying appellants' injunctive relief with respect to the sale would not qualify as a collateral order subject to immediate appeal.

Appeal quashed.[7]

---

[7] Although appellants have not raised a question regarding our jurisdiction to consider this appeal under Pa.R.A.P. 311(a)(4), we may raise the issue of jurisdiction **sua sponte**. **Commonwealth v. Blystone**, 119 A.3d 306, 312 (Pa. 2015). With certain exceptions not applicable here, an appeal may be taken as of right from an interlocutory order denying an injunction pursuant to Rule 311(a)(4).

> A party seeking a preliminary injunction must establish each of the six following prerequisites and the failure to establish any one of them is fatal to the request:
>
> > First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and

irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

***Duquesne Light Co. v. Longue Vue Club***, 63 A.3d 270, 275 (Pa.Super. 2013) (quotations and citation omitted).

Here, in their petition for preliminary injunction to enjoin the transfer of the estate real property and at the hearing on that petition, appellants failed to allege facts pertaining to, let alone establish, any of the six prerequisites. (Appellant's petition for preliminary injunction, 1/9/17; notes of testimony, 3/28/17). Therefore, even if appellants raised the issue of appealability under Rule 311(a)(4), any claim that the trial court abused its discretion in denying the petition would be waived because appellants failed to establish any of the necessary prerequisites below. ***See***

J. S12040/18

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/25/18

---

Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal[]").

- 18 -